IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GANZ, | |
| Plaintiff; | |
| v. | Civil Action No. 18-1357-RGA |
| SM KIDS, LLC, | |
| Defendant. | |

MEMORANDUM OPINION

David E. Moore, Bindu A. Palapura, Stephanie O'Byrne, and Jennifer Penberthy Buckley, POTTER ANDERSON & CORROON LLP, Wilmington, DE; David A. Perez, Zachary E. Davidson, and Christian W. Marcelo, PERKINS COIE LLP, Seattle, WA, attorneys for Plaintiff.

Patricia A. Winston and Kathleen A. Murphy, MORRIS JAMES LLP, Wilmington, DE; John M. Magliery, DAVIS WRIGHT TREMAINE LLP, New York, NY; Cyrus E. Ansari, DAVIS WRIGHT TREMAINE LLP, Seattle, WA, attorneys for Defendant.

August 26, 2019



**ANDREWS, U.S. DISTRICT JUDGE:**

Currently pending before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Cross-Motion for Summary Judgment. (D.I. 55, 65). The Parties have fully briefed the issues. (D.I. 56, 65, 69). After full consideration of the briefing, I will grant Plaintiff's motion and deny Defendant's cross-motion.

**I.  BACKGROUND**

Plaintiff Ganz filed this suit against Defendant SM Kids, LLC on August 31, 2018 alleging various contract and trademark infringement claims. (D.I. 1). Defendant counterclaimed for declaratory judgment. (D.I. 5). On May 17, 2019, the Parties stipulated to seek solely declaratory and equitable relief and "agree[d] that the Court may determine the Parties' rights and obligations under the Coexistence Agreement as a matter of law or as a trier of fact." (D.I. 47, ¶ 3). As part of this agreement, Plaintiff dismissed with prejudice all claims except for its breach of contract claim and Defendant dismissed all counterclaims except for its declaratory judgment claim. (*Id.*, ¶¶ 1-2). The Parties also dismissed all claims for damages. (*Id.*) The Parties have now submitted competing motions for summary judgment, subject to their agreement that I may decide any remaining factual issues as the trier of fact.

The relevant facts are as follows. In 2001, Plaintiff and Defendant's predecessor-in-interest, Steven Silvers, entered into the Coexistence Agreement. (*See* D.I. 47-1). Defendant agrees that it is bound by the Coexistence Agreement. The Coexistence Agreement was intended to resolve a legal dispute over each party's respective use of and trademarking of marks with the word "Googles." (D.I. 56 at 2; D.I. 65 at 8). The Parties dispute the meaning of the Coexistence Agreement. Paragraph 2.1 of the Coexistence Agreement states:

Silvers shall have the right to use the **Silvers' Mark** in connection with the extraterrestrial character depicted in Exhibit A to this Agreement, and subject to the following:

(a) Silvers shall expressly abandon Serial No. 75/547,007 and not seek to register at the [sic] either the federal or the state level any mark containing, or confusingly similar to, "GOOGLES" for PLUSH TOYS, but Silvers will not abandon any other "Googles" marks he holds or will hold in the future that relate to goods other than plush toys.

(b) Silvers shall not use the GOOGLES word on or in connection with any product, image or character without also using the character depicted in Exhibit A to this Agreement. If there is not room for the design portion of the **Silvers' Mark** along with the term "Googles," Silvers may use the word only, so long as use is not made in connection with a plush toy.

(c) Silvers shall never manufacture, distribute, market and/or sell any characters that resemble Ganz's current line of plush toys, or such plush toys that Ganz may add to the GOOGLES line in the future.

(d) Silvers and/or any assigns, persons, corporation(s), entities, heirs or legal representatives that Silvers designates to use the **Silvers' Mark** may use the **Silvers' Mark** on any such items that shall be marketed and distributed by Silvers, or by any other such designated entity of his or his assigns, heirs, or legal representatives, as long as the **Silvers' Mark** is used with the design logo and not just the word mark "Googles," except as set forth herein.

(e) Except as otherwise specified in this Agreement, Silvers is not prevented from creating other aliens or alien-themed merchandise utilizing the Silvers' Mark. Silvers may continue to use the terms "The Googles Family," "The Googles from Goo," "Googles.com" and any other terms currently being used or created for the alien-themed property and merchandise. Silvers may use the term "Googles" for purposes such as titles to books, movies, features, music, music titles and web sites relating to the alien-themed property.

(D.I. 47-1 ¶ 2.1). The Coexistence Agreement defines the "Silvers' Mark" as "the GOOGLES and Design Mark as represented in Serial No. 75/547,007."[1] (D.I. 47-1 ¶ 1.4). The "Silvers' Mark" has been reproduced below.

---

[1] I will use the term "Silvers' Mark" in accordance with this definition.



U.S. Trademark Application Serial No. 75/547,007 (filed Sept. 2, 1998) (abandoned June 11, 2001). Exhibit A to the Coexistence Agreement has been reproduced below.









(D.I. 47-1 at 8).

Plaintiff manufactures and sells toys and gifts, primarily in the United States and Canada. (D.I. 56 at 6). Plaintiff began selling a line of plush toys called "GOOGLES" in 1988. (*Id.*).

4

Plaintiff has continually used the GOOGLES word mark for its plush toys ever since. (*Id.*). In 1998, Plaintiff applied to register its GOOGLES mark for use with plush toys, and the application was granted in 2002. U.S. Trademark Reg. No. 2,554,518. Plaintiff has expanded its use of the GOOGLES mark to include the Webkinz website, "an online world where children can adopt and play with various virtual pets, including virtual pet-Googles." (D.I. 56 at 7).

Silvers created characters and published a book called *Googles and the Planet of Goo* in 1996. (*Id.*). The characters were aliens/extraterrestrials and looked like the character included in Exhibit A of the Coexistence Agreement (pictured above). In 1997, Silvers' company, the Googles Children's Workshop, was granted a trademark registration for the GOOGLES (design mark)[2] for children's books. U.S. Trademark Registration No. 2,087,590. The Parties agree that the mark was assigned to Silvers individually in 1999. (D.I. 5 ¶ 10; D.I. 56 at 7).

On September 1998, Silvers filed an intent-to-use application to register the Silvers' Mark for "plush toy figurines, plastic toy figurines." U.S. Trademark Application Serial No. 75/547,007. Plaintiff filed its trademark application for use of its GOOGLES mark on October 19, 1998 and opposed Silvers' application. U.S. Trademark Reg. No. 2,554,518; (D.I. 56 at 8). Plaintiff and Silvers settled their disagreement with the Coexistence Agreement, and Silvers abandoned his trademark application for the Silvers' Mark for plush toys. (D.I. 56 at 8); U.S. Trademark Application Serial No. 75/547,007.

## II.  LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[2] This design mark was the same as the Silvers' Mark.

Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When determining whether a genuine issue of material fact exists,[3] the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

### B. Contract Interpretation

The Agreement does not contain a choice of law provision. (D.I. 47-1). Neither Plaintiff nor Defendant has asserted that another state or country's law should apply to the resolution of their dispute. I will therefore apply Delaware contract law. *See Bel–Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 440–41 (3d Cir. 1999) ("The parties therefore generally carry both the burden of raising the issue that foreign law may apply in an action, and the burden of adequately proving foreign law to enable the court to apply it in a particular case. . . . Where parties fail to satisfy either burden the court will ordinarily apply the forum's law.").

Under Delaware law, "the threshold inquiry when presented with a contract dispute on a motion for summary judgment is whether the contract is ambiguous." *United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007). "Delaware law adheres to the objective theory of contracts," meaning that "a contract's construction should be that which would be understood

---

[3] The Parties have agreed that I can resolve any material disputes of fact that exist. However, I do not believe that there are any disputes of fact between the Parties that affect the determination of this motion.

by an objective, reasonable third party." *NBC Universal v. Paxson Commc'ns Corp.*, 2005 WL 1038997, at *5 (Del. Ch. Apr. 29, 2005). "An ambiguity exists only when a contract is fairly susceptible to two or more reasonable interpretations." *Unwired Planet, Inc. v. Microsoft Corp.*, 193 F. Supp. 3d 336, 342 (D. Del. 2016) (citing *Rossi v. Ricks*, 2008 WL 3021033, at *2 (Del. Ch. Aug. 1, 2008)). "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). "If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create ambiguity." *Unwired Planet*, 193 F. Supp. 3d at 342 (quoting *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997)).

### III. DISCUSSION

#### A. Interpretation of the Coexistence Agreement

The Parties disagree as to the meaning of the Coexistence Agreement. Plaintiff asserts, "The Coexistence Agreement's plain language limits [Defendant's] use of GOOGLES to aliens and reserves [Plaintiff's] use to everything else." (D.I. 56 at 8). Defendant asserts that the Coexistence Agreement "unambiguously permits [Defendant] to use "Googles" for Googles.com" regardless of whether the website content is alien or extraterrestrial themed. (D.I. 65 at 11-13). The Parties' disagreement centers on the relationship of the preamble language in paragraph 2.1 to subparagraphs (a)-(e), the relationship between the subparagraphs, and the plain language of paragraph 2.1(e). (D.I. 56 at 15-18; D.I. 65 at 19-22). I will address each subparagraph of paragraph 2.1 in turn.

1. **Paragraph 2.1 Preamble**

The plain language of the paragraph 2.1 preamble states, "Silvers shall have the right to use the Silvers' Mark in connection with the extraterrestrial depicted in Exhibit A to this agreement, and subject to the following:" (D.I. 47-1, ¶ 2.1). The "subject to the following" language indicates that if the preamble conflicts with a subparagraph, the subparagraph will govern. *See Subject to,* GARNER'S DICTIONARY OF LEGAL USAGE ONLINE (accessed July 18, 2019). This is consistent with the principle of contract construction that where a general and specific provision conflict, the specific provision should be given effect over or qualify the general provision. *DCV Holdings, Inc. v. ConAgra, Inc.*, 889 A.2d 954, 961 (Del. 2005); *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1184 (Del. 1992). However, the preamble language does not mean that the subparagraphs *necessarily* conflict with the preamble. Thus, in determining the relationship of each subparagraph to the preamble, I must determine whether the subparagraph is in conflict with or inconsistent with the plain language of the preamble.

2. **Paragraph 2.1(a)**

Paragraph 2.1(a) governs Silvers' trademark applications and registrations for the Silvers' Mark and other "Googles" marks. It explicitly states that Silvers "shall expressly abandon Serial No. 75/547,007 and not seek to register . . . any mark containing, or confusingly similar to, 'GOOGLES' for PLUSH TOYS." (D.I. 47-1 ¶ 2.1(a)). It also provides, "Silvers will not abandon any other 'Googles' marks he holds [for children's books] or will hold in the future that relate to goods *other than plush toys*."[4] (*Id.* (emphasis added)). Neither provision conflicts with the preamble's language. Thus, paragraph 2.1(a) should be read to include the limitation that any

---

[4] Silvers held a trademark of the same word and design for children's books. U.S. Trademark Registration No. 2,087,590.

"Googles" marks registered by Silvers must be for use "with the extraterrestrial character." This reading of paragraph 2.1(a) also comports with paragraph 2.3(b), which provides Plaintiff with the "unlimited right to use and register" the "Googles" mark for *any* goods so long as the goods are *not* alien/extraterrestrial and they do not resemble Silvers' Googles characters. (D.I. 47-1, ¶ 2.3(b)).

### 3. Paragraph 2.1(b)

Paragraph 2.1(b) provides guidance on the use of the word mark "Googles" on or with products, images, or characters. This paragraph appears to set out two "default" conditions for the use of the word "Googles." First, the word "Googles" must be used with the alien character from Exhibit A. (D.I. 47-1, ¶ 2.1(b)). This is consistent with the preamble, but not superfluous, as the preamble refers only to the Silvers' Mark, which includes the design. Second, the default is that the word "Googles" must be used with the design portion—in other words, the Silvers' Mark must be used—*unless* there is not space for the design portion. (*Id.*). However, the word "Googles" may never be used without the design portion of the Silvers' Mark for a plush toy. None of this language conflicts with the plain language of the preamble.

### 4. Paragraph 2.1(c)

Paragraph 2.1(c) does not appear to be in dispute. Its plain language prohibits Silvers' from manufacturing, distributing, marketing and/or selling "any characters that resemble [Plaintiff's] current line of plush toys, or such plush toys that [Plaintiff] may add to the GOOGLES line in the future." (*Id.*, ¶ 2.1(c)).

### 5. Paragraph 2.1(d)

Paragraph 2.1(d) explicitly expands the ability to use the Silvers' Mark in commerce to Silvers' "assigns, persons, corporation(s), entities, heirs or legal representatives that Silvers

designated to use the Silvers' Mark" so long as it is only used on items "marketed or distributed by Silvers, or by any other such designated entity of [Silvers] or his assigns, heirs or legal representatives." (*Id.*, ¶ 2.1(d)). This paragraph again reiterates that the default condition is that the Silvers' Mark be "used with the design logo and not just the word mark 'Googles,' except as set forth herein." (*Id.*). This language does not conflict with the preamble's requirement that the Silvers' Mark be used with the alien character from Exhibit A. Thus, though paragraph 2.1(d) expands the permission to use the Silvers' Mark to Silvers' "assigns, heirs, or legal representatives," it maintains the requirement that it be used with the alien character. Paragraph 2.1(d) is essentially irrelevant to the present dispute.

### 6. Paragraph 2.1(e)

Paragraph 2.1(e) states,

> Except as otherwise specified in this Agreement, Silvers is not prevented from creating other aliens or alien-themed merchandise utilizing the Silvers' Mark. Silvers may continue to use the terms "The Googles Family," "The Googles from Goo," "Googles.com" and any other terms currently being used or created for the alien-themed property and merchandise. Silvers may use the term "Googles" for purposes such as titles to books, movies, features, music, music titles and web sites relating to the alien-themed property.

(D.I. 47-1, ¶ 2.1(e)). The first sentence of paragraph 2.1(e) provides, "Silvers is not prevented from creating other aliens or alien-themed merchandise utilizing the Silvers' Mark." (*Id.*) This is not inconsistent with the preamble. Thus, in addition to using the Silvers' Mark "in connection with the extraterrestrial character depicted in Exhibit A," Defendant may also use the Silvers' Mark for "other aliens or alien-themed merchandise."

The second sentence of paragraph 2.1(e) provides, "Silvers may continue to use the terms 'The Googles Family,' 'The Googles from Goo,' 'Googles.com' and any other terms currently being used or created for the alien-themed property and merchandise." Defendant argues that the

post-modifier phrase "currently being used for or created for the alien-themed property and merchandise" modifies only "any other terms," but not "The Googles Family," "The Googles from Goo," or "Googles.com." (D.I. 65 at 13). Plaintiff argues that this sentence should be read to require "The Googles Family," "The Googles from Goo," and "Googles.com" to be used with the alien character or alien theme. (D.I. 69 at 6). Defendant argues that Plaintiff's interpretation should be rejected because it would make this sentence superfluous as it would not modify the entirety of paragraph 2.1. (D.I. 65 at 13).

I agree with Plaintiff that sentence two of paragraph 2.1(e) requires the terms "The Googles Family," "The Googles from Goo," and "Googles.com" to be used either with the alien character or the alien theme. Read in the context of paragraph 2.1(e), it is unambiguous that the sentence authorizes the continued use of the listed terms with their applications as of the date of the contract. The catch-all of the authorization provides that Silvers may continue to use "any other terms currently being used or created for the alien-themed property and merchandise." (D.I. 47-1, ¶ 2.1(e)). At the time the Coexistence Agreement was drafted, the terms "The Googles Family," "The Googles from Goo," and "Googles.com" were all being used for the alien-themed property and merchandise sold by Silvers. Thus, the list of terms itself implicitly contains the alien theme restriction. If the drafters' intention was to broadly authorize the use of these terms for *any* use, there was no reason for the drafters to have included the language "currently being used or created for the alien-themed property and merchandise." For example, authorization for any use could have been drafted as "Silvers may continue to use the terms 'The Googles Family,' 'The Googles from Goo,' 'Googles.com' and any other similar terms."

Sentence two is not inconsistent with the either the preamble or sentence one of paragraph 2.1(e) because sentence two addresses the use of "Googles"-related terms rather than the Silvers'

11

Mark itself. Defendant's interpretation of sentence two would create a conflict with paragraph 2.1(b), which requires that "Silvers shall not use the GOOGLES word . . . without also using the character depicted in Exhibit A to this Agreement." (D.I. 47-1, ¶ 2.1(b)). In contrast, Plaintiff's interpretation is harmonious with the remainder of the Coexistence Agreement by maintaining the alien theme restriction, which also mirrors the restrictions placed on Plaintiff in paragraph 2.3. *See* ¶ 2.3(a) ("[Plaintiff] shall not use the [Plaintiff] Mark in connection with extraterrestrial characters. . . .").

Contrary to Defendant's contentions, the interpretation as set out above does not make the second sentence of paragraph 2.1(e) superfluous. The preamble discusses only the right to use the Silvers' Mark with the character from Exhibit A, not the use of "Googles"-related terms. Similarly, paragraph 2.1(b) discusses the use of the word mark "Googles" on products, characters, and images without the design portion of the Silvers' Mark, not the use of the "Googles" word in other related terms. Additionally, paragraph 2.1(b) is limited to use with the character from Exhibit A. In contrast, the first sentence of paragraph 2.1(e) authorizes the creation of new aliens and alien merchandise. Read in conjunction with sentence one, sentence two provides permission to use "Googles"-related terms for alien-themed merchandise in the absence of the specific character shown in Exhibit A. Therefore, this interpretation of sentence two does not render any portion of the Coexistence Agreement superfluous.

This interpretation is also consistent with the third sentence of paragraph 2.1(e). That sentence provides, "Silvers may use the term 'Googles' for purposes such as titles to books, movies, features, music, music titles and web sites relating to the alien-themed property." (D.I. 47-1, ¶ 2.1(e)). The straightforward parallel structure of this lists indicates that the modifier "relating to the alien-themed property" modifies each of the nouns in the series, rather than solely

modifying "web sites."[5] Defendant asserts that interpreting the third sentence to require the use of the term "Googles" for the purposes enumerated in this sentence to be alien-related renders this sentence a superfluous repetition of paragraph 2.1(b). (D.I. 65 at 15). I disagree. Paragraph 2.1(b) requires use of the word "Googles" "with the character depicted in Exhibit A" and indicates that unless "there is not room for the design portion of the Silvers' Mark," the design portion should be used on products. The third sentence of paragraph 2.1(e) removes both of these requirements for a specific set of products, while retaining a requirement that when "Googles" is used for the titles to books, movies, features, music, music titles, and websites, those products continue to be alien-themed. This is consistent with the other two sentences in paragraph 2.1(e), the ongoing use of the word "Googles" by Silvers as shown in Exhibit A to the Coexistence Agreement, and the Agreement's prohibition of Plaintiff using the "GOOGLES" Mark with extraterrestrial characters. (D.I. 47-1, ¶¶ 2.1(e), 2.3(b); D.I. 47-1 at 8).

### 7. Summary

Thus, the Coexistence Agreement is unambiguous. It requires the following of Defendant:

1. Defendant may use the word "Googles" without the design mark for book titles, movies, features, music, music titles, websites, and other similar "purposes" so long as the titles, movies, etc., are alien or extraterrestrial themed.

2. Defendant may use the word "Googles" without the design mark for any other product, image, or character if it also uses the character depicted in Exhibit A

---

[5] Defendant cites *O'Connor v. Oakhurst Dairy*, 851 F.3d 69, 71 (1st Cir. 2017) for the proposition that "consistently omitting a serial comma can suggest that items in a list are *separate*." (D.I. 65 at 13). However, the page Defendant cites to is a summary of the district court proceedings, *Oakhurst*, 851 F.3d at 71, and the Court of Appeals ultimately concluded that the text of the statute was ambiguous. *Id.* at 76. Moreover, the dispute in *Oakhurst* was of a slightly different nature. The court in that case was asked to consider the following list, "The canning, processing, preserving, freezing, drying, marketing, storing, packing for shipment or distribution of:" and determine whether "packing for shipment or distribution of" was a single item on the list or two ("packing for shipment" and "distribution"). *Id.* at 71. The discussion in the cited case is thus unhelpful to the inquiry at issue here: whether "relating to the alien themed property" is properly read to solely modify "web site" or to modify every term in the list.

13

to the Coexistence Agreement and there is not room for the design portion of the Silvers' Mark.

3. Defendant may never use the word "Googles" alone for a plush toy.
4. Defendant may continue to use terms associated with Silvers' alien characters for the property and merchandise so long as the terms continue to be used with an alien theme or character.
5. Defendant may continue to create other alien characters or alien-themed merchandise using the Silvers' Mark and may use the Silvers' Mark on any items marketed and distributed by Defendant, if those items otherwise comply with the Coexistence Agreement.
6. Defendant is not prohibited from pursuing "Googles" marks for goods other than plush toys, so long as the use of the mark complies with the other provisions of the Coexistence Agreement.
7. Defendant may not make or sell any characters resembling Plaintiff's line of plush toys.

**B. Breach of Contract**

The Parties agree that Defendant currently (1) operates the www.googles.com website and use the GOOGLES word mark without an alien theme, (2) is pursuing two trademark applications for the GOOGLES word mark for uses not limited to aliens, and (3) has licensed the GOOGLES word mark to another organization to sell t-shirts bearing the GOOGLES word without any reference to aliens or the Googles characters. (D.I. 56 at 5; D.I. 65 at 2-3, 7). Each of these actions violates the Coexistence Agreement. (D.I. 47-1, ¶¶ 2.1(a)-(b), (e)). Thus, I will grant Plaintiff's motion for summary judgment on its breach of contract claim and deny Defendant's cross-motion.

**C. Injunction**

The Parties have stipulated that I "may determine the Parties' rights and obligations under the Coexistence Agreement as a matter of law or as a trier of fact . . . [and] issue a ruling on [the] remaining claim[s]." (D.I. 47 ¶ 3). The parties also stipulated that "a declaration of the parties' respective rights under the Coexistence Agreement and an injunction consistent with such declaratory judgment will fully and fairly adjudicate all issues, matters, and claims remaining in

14

this Action." (*Id.* ¶ 4). Defendant now argues that Plaintiff "has provided no support for permanent injunctive relief" and despite the stipulation of the Parties, I may not grant a permanent injunction. I disagree. The stipulation was the result of a tentative agreement made at a discovery conference on May 9, 2019 and has now been entered as an order of the Court. (D.I. 52). At that conference, Defendant offered to drop its own claims seeking damages and only to seek equitable remedies under its declaratory judgment counterclaim. (D.I. 73 at 31:13-18, 32:16-33:2). The Court then suggested that if the Parties were to drop their claims for damages, it could provide an expedited ruling on the merits resulting in "some kind of declaratory or possibly injunctive relief." (*Id.* at 35:9-22). Moreover, at the end of the conference, I stated that the expedited ruling would be the final judgment in the case. (*Id.* at 39:20-22). Both the conference and the stipulation contemplated bypassing further discovery to resolve the remaining issues in the case and contemplated that injunctive relief would be included.

Thus, I will grant an injunction commensurate in scope with my interpretation of the Coexistence Agreement and Defendant's actions. Plaintiff has submitted a proposed injunction. However, that proposed injunction is too broad in the actions it prohibits. I address each proposed restriction in turn.

**First**, paragraph 3(a) of Plaintiff's proposed order prohibits Defendant from using the Silvers' Mark without using the "Googles" alien character illustrated in Exhibit A of the Parties' Coexistence Agreement. However, the Coexistence Agreement contemplates that the Silvers' Mark may be used with alien characters other than the character in Exhibit A. Thus, I will modify this restriction to prohibit Defendant from using the Silvers' Mark without an alien character or theme.

**Second**, paragraph 3(b) of Plaintiff's proposed order would also enjoin more behavior than is prohibited by the Coexistence Agreement. According to my interpretation of the Coexistence Agreement, paragraph 3(b) should be modified to state,

> Utilizing the GOOGLES word mark on or in connection with any product, image, or character, including on websites or in services, unless the word mark is used (1) in connection with the alien character depicted in Exhibit A to the Coexistence Agreement and the design portion of the Silver's Mark does not fit, (2) for purposes such as the titles to books, movies, features, music, music titles, and websites where the underlying product or service is related to an alien-themed property, or (3) for terms used for Silvers' "Googles" alien property if they are used with an alien theme or character.

**Third**, Defendant disputes the scope of paragraph 3(c) of Plaintiff's proposed order because it argues that the Coexistence Agreement does not require a "predominate alien-theme" or "more than *de minimis* alien or extraterrestrial character content." (D.I. 65 at 28: *see* D.I. 55-1). Plaintiff did not respond to these arguments. (D.I. 69). I agree with Defendant that the language of the Coexistence Agreement does not require a "predominate" alien theme. However, the Coexistence Agreement clearly requires that "www.googles.com" must be used with an alien theme. Thus, I believe paragraph 3(c) should be modified to remove the "predominate" and "more than *de minimis*" language. Additionally, I do not believe the Coexistence Agreement prohibits the sale of non-alien-themed merchandise on www.googles.com, as long as the merchandise sold otherwise complies with the Coexistence Agreement's requirements. Thus, the injunction should be modified to remove the requirement that Defendant sell only alien-themed merchandise on the www.googles.com website.

**Fourth**, I note with respect to paragraphs 3(d)-(e) of the proposed order that Defendant is prohibited from continuing to prosecute the specific enumerated trademark applications. However, neither the injunction that will be entered nor my opinion herein should be taken to

prohibit future trademark applications for a "Googles" related mark if it otherwise complies with my interpretation of the Coexistence Agreement.

Thus, the injunction will be limited to the scope stated above.

## IV. CONCLUSION

For the foregoing reasons, I will grant Plaintiff's Motion for Summary Judgment and deny Defendant's Cross-Motion. I will enter an injunction commensurate with the scope of the Coexistence Agreement.

An accompanying order will be entered.